**SHAMIS & GENTILE, P.A.**
Andrew Shamis (NY Bar No. 5195185)
Katherine Phillips**
14 NE 1st Ave., Suite 705
Miami, FL 33132
Telephone: (305) 479-2299
ashamis@shamisgentile.com
kphillips@shamisgentile.com

**EDELSBERG LAW, P.A.**
Scott A. Edelsberg**
Gabriel Mandler**
20900 NE 30th Ave., Suite 417
Aventura, FL 33180
Telephone: (305) 975-3320
scott@edelsberglaw.com
gabriel@edelsberglaw.com

***pro hac vice application forthcoming*

*Attorneys for Plaintiff and the Putative Classes*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Jacob Floro, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Garza Food Ventures, LLC dba Siete Foods and PepsiCo, Inc.,<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Jacob Floro ("Plaintiff"), on behalf of himself and all others similarly situated, brings this class action against Defendants Garza Food Ventures, LLC dba Siete Foods and PepsiCo, Inc. (collectively, "Defendants") based upon personal knowledge as to himself, and upon information, investigation and belief of his counsel.

## INTRODUCTION

1. This class action seeks to challenge Defendants' false and deceptive practices in the marketing and sale of several of their products, which are marketed as made entirely with avocado oil.

2. Specifically, Defendants have sold and marketed the Products (fully defined in Paragraph 13, below) as "MADE WITH AVOCADO OIL" (the "Avocado Oil Representations"), representing to consumers that their Products are made entirely with avocado oil.

3. Despite the Avocado Oil Representations, and unbeknownst to consumers, the Products are not made entirely with avocado oil. Instead, the Products are adulterated with cheaper seed oils.

4. Plaintiff and other consumers purchased the Products and paid a premium price based upon their reliance on the Avocado Oil Representations. Had Plaintiff and other consumers been aware that the Avocado Oil Representations were false, they would not have purchased the Products or would have paid significantly less for them. Accordingly, Plaintiff and Class members have been injured by Defendants' deceptive business practices.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) in that: (1) this is a class action involving more than 100 Class members; (2) the parties are minimally diverse, as at least one member of the proposed Class(es) is a citizen of a state different than Defendants' state of citizenship; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interest and costs.

6. This Court has general personal jurisdiction over Defendant PepsiCo, Inc. because its principal place of business is located in Purchase, New York, within this District, and it is

therefore at home in New York. This Court has personal jurisdiction over Defendant Garza Food Ventures, LLC because it conducts and transacts substantial business in New York, and intentionally and purposefully placed the Products into the stream of commerce within New York, including in this District. In addition, the conduct giving rise to Plaintiff's claims, including the development, review, approval, and dissemination of the Avocado Oil Representations, was directed from PepsiCo's headquarters in this District.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Defendant PepsiCo, Inc. maintains its principal place of business and world headquarters in Purchase, New York, which lies in Westchester County within this District, and the labeling, packaging, marketing, and advertising decisions that produced and disseminated the challenged Avocado Oil Representations were made, reviewed, and approved there. Venue is also proper under 28 U.S.C. § 1391(b)(1) and (c)(2) because Defendants reside in this District, in that each is subject to this Court's personal jurisdiction with respect to this action.

## PLAINTIFF

8. Plaintiff is a citizen of the United States and the State of California, and he currently resides in San Mateo, California. In or around August 2026, Plaintiff purchased the Siete Chips Variety Pack which include the Siete Kettle Cooked Sea Salt Potato Chips Made with Avocado Oil from a Safeway store in Foster City, California. Based on the Product's Avocado Oil Representations, Plaintiff reasonably believed that the Product was made entirely with avocado oil. Had he known that the Product was not made entirely with avocado oil, he would not have purchased it, or would have paid significantly less for it.

9. Despite Defendants' misrepresentations, Plaintiff would purchase the Products, as advertised, if they were actually made entirely with avocado oil. Although Plaintiff regularly shops at various retail stores that carry the Products, absent an injunction of Defendants' deceptive advertising, he will be unable to rely with confidence on Defendants' advertising of the Products in the future. Furthermore, while Plaintiff currently believes that the Products are not made entirely

with avocado oil, he lacks personal knowledge as to Defendants' specific business practices, and thus, he will not be able to determine whether the Products truly will accurately reflect their advertising. This leaves doubt in his mind as to the possibility that at some point in the future the Products could be made in accordance with the Avocado Oil Representations. This uncertainty, coupled with his desire to purchase the Products, is an ongoing injury that can and would be rectified by an injunction enjoining Defendants from making the alleged misleading representations. In addition, other Class members will continue to purchase the Products, reasonably but incorrectly, believing that the Products are made entirely with avocado oil.

## DEFENDANTS

10. Defendant Garza Food Ventures, LLC is a Texas limited liability company with its principal place of business in Austin, Texas. Along with Defendant PepsiCo, Inc., Defendant Garza Food Ventures, LLC operates the Siete brand which sells a variety of grain free, potato, and maiz corn chips and snacks, including the Products challenged in this Complaint. Defendant sells the Products throughout California, including in this District. Defendant Garza Food Ventures, LLC sells the Products throughout the United States, including in New York and in this District, and in California.

11. Defendant PepsiCo, Inc. is a North Carolina corporation with its principal place of business in Purchase, New York which is located in Westchester County, within this District. Along with Defendant Garza Food Ventures, LLC, Defendant PepsiCo, Inc. operates the Siete brand which sells a variety of grain free, potato, and maiz corn chips and snacks, including the Products challenged in this Complaint. Defendant sells the Products throughout the United States, including in New York and in this District, and in California. Defendant PepsiCo, Inc. directs the development, review, and approval of the Products' labeling, packaging, and marketing, including the Avocado Oil Representations, from its headquarters in this District.

**FACTUAL ALLEGATIONS**

12. Defendants are responsible for the formulation, manufacturing, marketing, labeling, advertising, distribution and sale of Siete branded products, which are sold in retail stores across the United States as well as directly on Defendants' website.

13. The Products at issue in this case are the Siete Kettle Cooked Sea Salt Potato Chips Made with Avocado Oil and the Siete Maiz Sea Salt Corn Tortilla Chips Made with Avocado Oil (collectively, the "Products").

14. Defendants have labeled each Product as "MADE WITH AVOCADO OIL," representing to consumers that their Products are made entirely with avocado oil. The Products are depicted below:




15. However, despite the Avocado Oil Representations, the Products are not made entirely with avocado oil. Instead, the Products are adulterated with cheaper seed oils.

16. Independent scientific testing confirms that the Products are not made entirely with avocado oil. In 2026, researchers at the University of California, Davis, Department of Food Science and Technology and the University of California Agriculture and Natural Resources published a peer-reviewed study (the "Study") of the authenticity of avocado oil used as an ingredient in commercially processed foods.[1] A true and correct copy of the Study is attached hereto as Exhibit A ("Ex. A").

17. The Study set out to determine whether processed foods, including chips, mayonnaise and salad dressings, that claim to contain avocado oil as the sole oil ingredient in fact contain the oil declared on the label. *Id.* Only products that declared a single edible oil (e.g., avocado oil) in the ingredients, and that did not list any additional edible oils, were included. Across all categories the Study analyzed 74 samples. *Id.* The Study tested 28 avocado oil–labeled chip samples, consisting of two separate production lots of each of 14 different avocado oil–labeled chip products. *Id.* The products were purchased in 2025 and 2026 from retail stores in California and from online sources, and each lot was analyzed in duplicate. *Id.* The brand and product name of every sample tested is identified in the Study's brand information exhibit, a true and correct copy of which is attached hereto as Exhibit B ("Ex. B").[2]

18. The Products at issue in this action were among the avocado oil–labeled chip products tested. Specifically, the Study tested and reported results for two separate lot numbers of each of the following: Siete Kettle Cooked Sea Salt Potato Chips Made with Avocado Oil (Samples 13 and 14) and Siete Maiz Sea Salt Corn Tortilla Chips Made with Avocado Oil (Samples 15 and 16). *See* Ex. B.

19. To recover and test the oil used in each of the Study's products, the researchers first recovered the lipid (oil) fraction from each chip sample using a published extraction protocol for potato chips. Approximately 30 grams of chips was blended in a food processor. Ex. A.

---

[1] Natalie Lopez-Alvarez et al., *Authenticity Of Avocado And Olive Oils Used As Ingredients In Commercially Processed Foods*, 6 Applied Food Research 102389 (2026), https://doi.org/10.1016/j.afres.2026.102389 .

[2] Brand Information Relating to the Study, *supra* note 1, available at https://ucdavis.app.box.com/s/6ogs4l0ogplunooktwryr5b1m6k2xr9u/file/2353660743779.

Approximately 10 grams of the crushed chips was then weighed into a cellulose extraction thimble and subjected to Soxhlet extraction with n-hexane at 69°C for 25 cycles. *Id.*The residual hexane was evaporated under a drying step and the sample was left in a fume hood until no hexane remained, yielding the extracted fat from the chips for analysis. *Id.*

20. For the fatty acid profile, the extracted oil was converted to fatty acid methyl esters (a standard chemical preparation that allows the individual fatty acids in any edible oil to be separated and measured), using a published official method for that preparation (COI/T.20/Doc. No 33/Rev.1), and analyzed by gas chromatography with flame ionization detection ("GC-FID"). *Id.* The individual fatty acids were identified against a 37-component certified reference standard covering the full range of fatty acids found in edible oils. *Id.*The measurement method is common to all edible oils; the avocado-specific benchmarks against which the results were judged are set forth in Paragraph 21 below.

21. The fatty acid and sterol profile measured for each chip sample was then compared against the compositional ranges for authentic avocado oil established by the Codex Alimentarius Standard for Named Vegetable Oils (CXS 210-1999). *Id.* Those ranges are designed to encompass the natural variability of authentic avocado oil attributable to cultivar, geographic origin, maturity, and growing conditions. *Id.* The researchers then applied further tolerances that operated in the tested products' favor: a deviation limited to a single fatty acid or sterol marker that did not exceed the Codex limit by more than ten percent was disregarded and the sample was treated as consistent with authentic avocado oil, and a sample that was fully consistent as to one profile and only borderline as to the other was likewise treated as consistent. *Id.* Only samples exhibiting multiple deviations, or patterns inconsistent with authentic avocado oil reference profiles, were classified as inconsistent. *Id.*

22. Every lot of every Product tested failed those criteria. Each of the four Siete samples was classified as compositionally inconsistent with authentic avocado oil. *See* Ex. B.

23. The compositional deviations measured in the avocado oil–labeled chips, including the Products, were not random. Ex. A. They followed a single, consistent pattern: reduced levels

of palmitic acid (C16:0), palmitoleic acid (C16:1), cis-vaccenic acid (C18:1 n-7), beta-sitosterol, and clerosterol, together with elevated levels of stearic acid (C18:0), campesterol, stigmasterol, delta-7-stigmastenol, and delta-7-avenasterol. *Id.* That combination is not characteristic of authentic avocado oil. *Id.* It is instead characteristic of cheaper vegetable seed oils, and is the signature of substitution or dilution of avocado oil with such oils. Most of the avocado oil–labeled chips fell outside the Codex ranges for palmitic acid, palmitoleic acid, and stearic acid, and outside the Codex ranges for campesterol, stigmasterol, and delta-7-avenasterol. *Id.* Principal component analysis of the fatty acid and sterol data confirmed the point: many of the avocado oil–labeled samples clustered not with authentic avocado oil, but with the Study's comparator products formulated with canola, corn, soybean, and/or sunflower oil. *Id.*

24. The cis-vaccenic acid results are particularly probative. Cis-vaccenic acid (C18:1 n-7) is an established marker for detecting seed oil adulteration of avocado oil because it is characteristically elevated in authentic avocado oil and present at markedly lower levels in the common seed oils used to adulterate it. *Id.* In the Study, the avocado oil–labeled samples classified as consistent with authentic avocado oil contained a mean cis-vaccenic acid content of 5.3% ± 1.0% of total fatty acids, clustering in a 4–6% range. *Id.* The samples classified as inconsistent (i.e., the group that includes the Products) contained a mean of only 1.7% ± 0.5%, clustering in a 1–2% range that aligns with typical vegetable seed oil profiles. *Id.* The difference between the two groups was statistically significant ($p < 0.001$). *Id.*

25. These deviations cannot be attributed to frying or to any other ordinary step in the manufacture of chips. *Id.* The researchers specifically tested that explanation by preparing model potato chips and model corn tortilla chips fried in pure avocado oil under commercial frying conditions (180°C for seven minutes and four minutes, respectively), and then extracting and analyzing the oil from those model chips using the same methods described above. *Id.* Frying changed the major fatty acids by less than 0.6%; it changed cis-vaccenic acid by only 0.1%; it changed palmitic acid, palmitoleic acid, and stearic acid by no more than 0.2%; and it left delta-7-avenasterol unchanged. *Id.* In other words, chips fried in authentic avocado oil still test as authentic

avocado oil. Those processing-induced changes are a small fraction of the deviations measured in the Products and cannot explain them. *Id.*The only explanation consistent with the data is that the oil in the Products is not entirely avocado oil, but instead consists in substantial part of cheaper seed oils—precisely as Plaintiff alleges, and precisely contrary to the Avocado Oil Representations.

26. The Avocado Oil Representations are material to reasonable consumers because avocado oil is widely regarded as healthier, and therefore more premium, than other cooking oils, and consumers pay more for it as a result.

27. That reputation is well founded. Avocado oil delivers meaningful health benefits, including cardiovascular benefits and anti-inflammatory effects.[3] Avocado oil also performs better than many other cooking oils because of its high smoke point and mild taste.[4]

28. Seed oils, by contrast, are viewed by many consumers as ingredients to be avoided. The eight most prevalent seed oils, known colloquially as the "hateful eight," are believed by many to be toxic, a reputation driven in part by their high linoleic acid content, which is thought to promote inflammation linked to conditions such as arthritis, heart disease, metabolic syndrome, stroke, and type 2 diabetes.[5]

29. For these reasons, many consumers seek to eliminate seed oils from their diets and instead pay a premium for alternatives such as avocado oil. Defendants have capitalized on that consumer preference by labeling and advertising the Products as made entirely with avocado oil when they are not.

30. The reasonable belief that the Products are made entirely with avocado oil was a significant factor in Plaintiff's and other Class members' decisions to purchase the Products. Thus,

---

[3] Marcos Flores et al., *Avocado Oil: Characteristics, Properties, and Applications*, 10 Molecules 24 (June 2019), https://pmc.ncbi.nlm.nih.gov/articles/PMC6600360/.

[4] *Yes, Avocado Oil Is Good for You*, Cleveland Clinic (Dec. 19, 2024), https://health.clevelandclinic.org/is-avocado-oil-good-for-you.

[5] Julia Zumpano, RD, LD, *Seed Oils: Are They Actually Toxic?*, Cleveland Clinic (March 3, 2025), https://health.clevelandclinic.org/seed-oils-are-they-actually-toxic.

Defendants promise a product made entirely with avocado oil, but provide consumers with a product that is adulterated with cheaper seed oils.

31. As the entities responsible for the development, labeling, manufacturing, advertising, distribution and sale of the Products, Defendants knew or should have known that the Products' Avocado Oil Representations are false and misleading.

32. Defendants also knew or should have known that Plaintiff and other consumers, in purchasing the Products, would rely on Defendants' false and misleading representations. Nonetheless, Defendants deceptively advertise the Products in order to deceive consumers and gain an unfair advantage in the market.

33. Consumers are willing to pay more for the Products based on the belief that the Products are made entirely with avocado oil. Plaintiff and other consumers would have paid significantly less for the Products, or would not have purchased them at all, had they known the truth about them. Thus, through the use of misleading representations, Defendants command a price that Plaintiff and the Classes would not have paid had they been fully informed.

34. Therefore, Plaintiff and other consumers purchasing the Products have suffered injury in fact and lost money as a result of Defendants' false and deceptive practices, as described herein.

## PLAINTIFF LACKS AN ADEQUATE REMEDY AT LAW

35. Plaintiff pleads the equitable claims and remedies asserted in this Complaint, including restitution and injunctive relief, in the alternative to the legal claims and remedies asserted herein. Plaintiff and the Classes are entitled to do so because they lack an adequate remedy at law for the equitable relief sought. As to the restitution sought, the legal remedies available to Plaintiff and the Classes are inadequate because they are not equally prompt, certain, or efficient and require proof of elements and entitlement to relief different from those required for restitution. Accordingly, if Plaintiff or any Class member is unable to recover damages under the legal claims asserted herein, restitution may nevertheless be necessary to restore money wrongfully obtained by Defendants. As to injunctive relief, damages are retrospective and cannot redress the

prospective injury alleged in Paragraph 9 above. Only an injunction can remedy Plaintiff's continuing inability to rely on Defendants' labeling of the Products.

## CLASS ACTION ALLEGATIONS

36. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 and all other applicable laws and rules, individually, and on behalf of all members of the following Classes:

> **Nationwide Class**
> All persons who purchased the Products in the United States within the applicable statute of limitations period ("Nationwide Class").
>
> **California Class**
> All residents of California who purchased the Products within the applicable statute of limitations period ("California Class").
>
> **California Consumer Subclass**
> All residents of California who purchased the Products for personal, family, or household purposes, within the applicable statute of limitations period ("California Consumer Subclass") (together with the Nationwide Class and the California Class, the "Classes").

37. Excluded from the Classes are the following individuals and/or entities: Defendants and their parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which Defendants have a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

38. Plaintiff reserves the right to modify or amend the definition of the proposed Classes and/or add subclasses before the Court determines whether class certification is appropriate.

39. Plaintiff is a member of all the Classes.

40. **Numerosity:** Members of each Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. The precise number of Class members is unknown to Plaintiff but is likely to be ascertained by Defendants' records through their online marketplace, or through sales data obtained via third parties. At a minimum, there likely are tens of thousands of Class members.

41. **Commonality:** There are questions of law and fact common to the proposed Classes. Common questions of law and fact include, without limitation:

a. whether Defendants' course of conduct alleged herein violates the statutes and other laws that are pled in this Complaint;

b. whether reasonable consumers would rely upon Defendants' representations about the Products and reasonably believe the Products are made entirely with avocado oil;

c. whether Defendants knew or should have known their representations were false or misleading;

d. whether Defendants were unjustly enriched by retaining monies from the sale of the Products;

e. whether certification of each Class is appropriate under Rule 23;

f. whether Plaintiff and the members of each Class are entitled to declaratory, equitable, or injunctive relief, and/or other relief, and the scope of such relief; and

g. the amount and nature of the relief to be awarded to the Plaintiff and the Classes, including whether Plaintiff and the Classes are entitled to punitive damages.

42. **Typicality:** Plaintiff's claims are typical of the other Class members because Plaintiff, as well as Class members, purchased the Products. Plaintiff and the members of the Classes relied on the representations made by Defendants about the Products prior to purchasing the Products. Plaintiff and the members of each Class paid for Defendants' Products and would not have purchased them (or would have paid substantially less for them) had they known that Defendants' representations were untrue.

43. **Adequacy:** Plaintiff will fairly and adequately protect the interests of the proposed Classes as his interests do not conflict with the interests of the members of the proposed Classes he seeks to represent, and he has retained counsel competent and experienced in class action

litigation. Thus, the interests of the members of the Classes will be fairly and adequately protected by Plaintiff and his counsel.

44. **Predominance:** Pursuant to Rule 23(b)(3), the common issues of law and fact identified in this Complaint predominate over any other questions affecting only individual members of the Classes. Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendants' misconduct detailed at length in this Complaint.

45. **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of tens of thousands of individual claims in separate lawsuits, every one of which would present the issues presented in the Complaint/lawsuit. Further, because the damages suffered by any individual Class member may be relatively modest in relation to the cost of litigation, the expense and burden of individual litigation make it difficult, if not impossible, for individual Class members to obtain redress. Furthermore, many of the Class members may be unaware that claims exist against Defendants.

46. **Declaratory and Injunctive Relief:** Pursuant to Rule 23(b)(2), declaratory and injunctive relief is appropriate in this matter. Defendants have acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class members as a whole. Unless a class-wide injunction is issued, Defendants will continue to advertise, market, promote, and sell the Products in an unlawful and misleading manner, as described throughout this Complaint, and members of the Classes will continue to be misled, harmed, and denied their rights under the law.

**FIRST CLAIM FOR RELIEF**
**Violation of California's Consumers Legal Remedies Act**
**California Civil Code §§ 1750, *et seq.***
**(*For the California Consumer Subclass*)**

47. Plaintiff repeats the allegations contained in Paragraphs 1-46 above as if fully set forth herein.

48. Plaintiff brings this claim individually and on behalf of the members of the proposed California Consumer Subclass against Defendants pursuant to California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*

49. The Products are "goods" within the meaning of Cal. Civ. Code § 1761(a), and the purchases of the Products by Plaintiff and members of the California Consumer Subclass constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

50. Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have . . . ." By representing the Products with the Avocado Oil Representations, Defendants have represented and continue to represent that the Products have characteristics (i.e., that they are made entirely with avocado oil) that they do not have. Therefore, Defendants have violated section 1770(a)(5) of the CLRA.

51. Cal. Civ. Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." By representing the Products with the Avocado Oil Representations, Defendants have represented and continue to represent that the Products are of a particular standard (i.e., that they are made entirely with avocado oil) when they are not of that standard. Therefore, Defendants have violated section 1770(a)(7) of the CLRA.

52. Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By advertising the Products with the Avocado Oil Representations, Defendants have advertised the Products with characteristics they intended not to provide to consumers. As such, Defendants have violated section 1770(a)(9) of the CLRA.

53. Cal. Civ. Code § 1770(a)(16) prohibits "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not." By representing the Products with the Avocado Oil Representations and then supplying Products that are adulterated with cheaper seed oils, Defendants have supplied the Products in a manner inconsistent with their previous representations. Therefore, Defendants have violated section 1770(a)(16) of the CLRA.

54. At all relevant times, Defendants have known or reasonably should have known that the advertising of the Products' Avocado Oil Representations is false and misleading, and that Plaintiff and other members of the California Consumer Subclass would reasonably and justifiably rely on the Avocado Oil Representations when purchasing the Products. Nonetheless, Defendants deceptively advertise the Products as such in order to deceive consumers into believing that the Products are made entirely with avocado oil, when they are not.

55. Plaintiff and members of the California Consumer Subclass have justifiably relied on Defendants' misleading representations when purchasing the Products. Moreover, based on the materiality of Defendants' misleading and deceptive conduct, reliance may be presumed or inferred for Plaintiff and members of the California Consumer Subclass.

56. Plaintiff and members of the California Consumer Subclass have suffered and continue to suffer injuries caused by Defendants because they would have paid significantly less for the Products, or would not have purchased them at all, had they known that the Products are not made entirely with avocado oil.

57. Under Cal. Civ. Code § 1782, on or around September 17, 2026, counsel for Plaintiff mailed a notice and demand letter by certified mail to Defendants, outlining that Defendants have violated the CLRA for the reasons described herein. If within 30 days of receipt, Defendants do not agree to rectify the problems identified herein, Plaintiff will amend this Complaint to seek damages pursuant to Cal. Civ. Code § 1780 on behalf of himself and the members of the California Class, or in the alternative, the California Consumer Subclass.

58. In accordance with Cal. Civ. Code § 1780(d), Plaintiff is filing a declaration of venue, attached hereto as Exhibit C to this Complaint.

**SECOND CLAIM FOR RELIEF**
**Violation of California's False Advertising Law**
**California Business & Professions Code §§ 17500, *et seq.***
**(*For the California Class*)**

59. Plaintiff repeats the allegations contained in Paragraphs 1-46 above as if fully set forth herein.

60. Plaintiff brings this claim individually and on behalf of the members of the proposed California Class against Defendants pursuant to California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*

61. The FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

62. Defendants have represented and continue to represent to the public, including Plaintiff and members of the proposed California Class, through their deceptive advertising, that the Products are made entirely with avocado oil when they are not. Because Defendants have disseminated misleading information regarding the Products, and Defendants know, knew, or should have known through the exercise of reasonable care that the representations were and continue to be misleading, Defendants have violated the FAL.

63. As a result of Defendants' false advertising, Defendants have and continue to unlawfully obtain money from Plaintiff and members of the California Class. Plaintiff therefore requests that the Court cause Defendants to restore this fraudulently obtained money to him and members of the proposed California Class, to disgorge the profits Defendants made on these transactions, and to enjoin Defendants from violating the FAL or violating it in the same fashion

in the future as discussed herein. Otherwise, Plaintiff and members of the proposed California Class may be irreparably harmed and/or denied an effective and complete remedy.

**THIRD CLAIM FOR RELIEF**
**Violation of California's Unfair Competition Law ("UCL"),**
**California Business & Professions Code §§ 17200, *et seq.***
**(*For the California Class*)**

64. Plaintiff repeats the allegations contained in Paragraphs 1-46 above as if fully set forth herein.

65. Plaintiff brings this claim individually and on behalf of the members of the proposed California Class against Defendants pursuant to California Business & Professions Code § 17200 ("UCL").

66. The UCL, Cal. Bus. & Prof. Code § 17200, provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

67. Under the UCL, a business act or practice is "unlawful" if it violates any established state or federal law. Defendants' false and misleading advertising of the Products was and continues to be "unlawful" because it violates the CLRA, the FAL, and other applicable laws as described herein. As a result of Defendants' unlawful business acts and practices, Defendants have unlawfully obtained money from Plaintiff and members of the proposed California Class.

68. Under the UCL, a business act or practice is "unfair" if its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims. Defendants' conduct was and continues to be of no benefit to purchasers of the Products, as it is misleading, unfair, unlawful, and is injurious to consumers who rely on the Products' advertising. Deceiving consumers into believing they will receive Products made entirely with avocado oil, but failing to provide the Products as advertised, is of no benefit to consumers. Therefore, Defendants' conduct was and continues to be "unfair." As a result of

Defendants' unfair business acts and practices, Defendants have and continue to unfairly obtain money from Plaintiff and members of the proposed California Class.

69. Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is likely to deceive members of the consuming public. Defendants' conduct here was and continues to be fraudulent because, due to the Products' Avocado Oil Representations, the Products have the effect of deceiving consumers into believing they will receive products made entirely with avocado oil when the Products are not manufactured as such. Because Defendants misled Plaintiff and members of the California Class, Defendants' conduct was "fraudulent." As a result of Defendants' fraudulent business acts and practices, Defendants have and continue to fraudulently obtain money from Plaintiff and members of the California Class.

70. Plaintiff requests that the Court cause Defendants to restore this unlawfully, unfairly, and fraudulently obtained money to him, and members of the proposed California Class, to disgorge the profits Defendants made on these transactions, and to enjoin Defendants from violating the UCL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff and members of the proposed California Class may be irreparably harmed and/or denied an effective and complete remedy.

**FOURTH CLAIM FOR RELIEF**
**Breach of Express Warranty**
**Cal. Com. Code § 2313**
**(*For the California Class*)**

71. Plaintiff repeats the allegations contained in Paragraphs 1-46 above as if fully set forth herein.

72. Plaintiff brings this claim individually and on behalf of the members of the California Class against Defendants for breach of express warranty under Cal. Com. Code § 2313.

73. California's express warranty statutes provide that "(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise," and "(b) Any description of the goods which is made part of the basis of the bargain

creates an express warranty that the goods shall conform to the description." Cal. Com. Code § 2313.

74. Plaintiff and members of the California Class formed a contract with Defendants at the time they purchased the Products. As part of those contracts, Defendants represented that the Products are "MADE WITH AVOCADO OIL," representing that the Products are made entirely with avocado oil.

75. The Products' Avocado Oil Representations are: (a) an affirmation of fact or promise made by Defendants to consumers that the Products are made entirely with avocado oil; (b) became part of the basis of the bargain to purchase the Products when Plaintiff and other consumers relied on the representations; and (c) created an express warranty that the Products would conform to the affirmations of fact or promises. In the alternative, the representations about the Products are descriptions of goods which were made as part of the basis of the bargain to purchase the Products, and which created an express warranty that the Products would conform to the product descriptions.

76. Plaintiff and members of the California Class reasonably and justifiably relied on the foregoing express warranties, believing that the Products did in fact conform to those warranties.

77. Defendants have breached the express warranties made to Plaintiff and members of the California Class by failing to provide the Products in accordance with the Avocado Oil Representations.

78. Plaintiff and members of the California Class paid a premium price for the Products but did not obtain the full value of the Products as represented. If Plaintiff and members of the California Class had known of the true nature of the Products, they would not have been willing to pay the premium price associated with them. As a result, Plaintiff and members of the California Class suffered injury and deserve to recover all damages afforded under the law.

79. Plaintiff and the other California Class members notified Defendants of the breaches of their express warranties within a reasonable time and/or were not required to do so.

Indeed, Plaintiff sent a notice letter to Defendants regarding their breaches on or around September 17, 2026. Defendants were also on notice of their breaches from other sources, including the Study cited *supra*.

**FIFTH CLAIM FOR RELIEF**
**Breach of Implied Warranty**
**Cal. Com. Code § 2314**
**(*For the California Class*)**

80. Plaintiff repeats the allegations contained in Paragraphs 1-46 above as if fully set forth herein.

81. Plaintiff brings this claim individually and on behalf of the members of the California Class against Defendants for breach of implied warranty under Cal. Com. Code § 2314.

82. California's implied warranty of merchantability statute provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Cal. Com. Code § 2314(1).

83. California's implied warranty of merchantability statute also provides that "[g]oods to be merchantable must be at least such as . . . (f) conform to the promises or affirmations of fact made on the container or label if any." Cal. Com. Code § 2314(2)(f).

84. Defendants are merchants with respect to the sale of the Products. Therefore, a warranty of merchantability is implied in every contract for sale of the Products to California consumers.

85. By advertising the Products with the Avocado Oil Representations, Defendants made an implied promise in the Products' labeling that the Products are made entirely with avocado oil. The Products, however, have not conformed to these promises because the Products are adulterated with cheaper seed oils. Plaintiff, as well as other California consumers, did not receive the goods as impliedly warranted by Defendants to be merchantable. Therefore, the Products are not merchantable under California law and Defendants have breached their implied warranty of merchantability in regard to the Products.

86. If Plaintiff and members of the California Class had known that the Products' Avocado Oil Representations were false and misleading, they would not have been willing to pay the premium price associated with them. Therefore, as a direct and/or indirect result of Defendants' breach, Plaintiff and members of the California Class have suffered injury and deserve to recover all damages afforded under the law.

87. Plaintiff and the other California Class members notified Defendants of the breaches of their implied warranties within a reasonable time and/or were not required to do so. Indeed, Plaintiff sent a notice letter to Defendants regarding their breaches on or around September 17, 2026. Defendants were also on notice of their breaches from other sources, including the Study cited *supra*.

**SIXTH CLAIM FOR RELIEF**
**Quasi Contract/Unjust Enrichment/Restitution**
**(*For the Nationwide Class, or in the alternative, the California Class*)**

88. Plaintiff repeats the allegations contained in Paragraphs 1-46 above as if fully set forth herein.

89. Plaintiff brings this claim individually and on behalf of the members of the proposed Nationwide Class, or in the alternative, the California Class, against Defendants for unjust enrichment.

90. As alleged herein, Defendants have intentionally and recklessly made misleading representations to Plaintiff and members of the Nationwide Class, or in the alternative, the California Class, to induce them to purchase the Products. Plaintiff and members of the Nationwide Class, or in the alternative, the California Class, have reasonably relied on the misleading representations and have not received all of the benefits (i.e., Products made entirely with avocado oil) promised by Defendants through the Products' Avocado Oil Representations. Plaintiff and members of the proposed Nationwide Class, or in the alternative, the California Class, have therefore been induced by Defendants' misleading and deceptive representations about the Products, and paid more money to Defendants for the Products than they otherwise would and/or should have paid.

91. Plaintiff and members of the proposed Nationwide Class, or in the alternative, the California Class, have conferred a benefit upon Defendants as Defendants have retained monies paid to them by Plaintiff and members of the proposed Nationwide Class, or in the alternative, the California Class.

92. The monies received were obtained under circumstances that were at the expense of Plaintiff and members of the proposed Nationwide Class, or in the alternative, the California Class—i.e., Plaintiff and members of the proposed Nationwide Class, or in the alternative, the California Class, did not receive the full value of the benefit conferred upon Defendants. Therefore, it is inequitable and unjust for Defendants to retain the profit, benefit, or compensation conferred upon them.

93. As a direct and proximate result of Defendants' unjust enrichment, Plaintiff and members of the proposed Nationwide Class, or in the alternative, the California Class, are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendants from their deceptive, misleading, and unlawful conduct as alleged herein.

**SEVENTH CLAIM FOR RELIEF**
**Common Law Fraud**
**(*For the Nationwide Class, or in the alternative, the California Clas*)**

94. Plaintiff repeats the allegations contained in Paragraphs 1-46 above as if fully set forth herein.

95. Plaintiff brings this claim individually and on behalf of the members of the proposed Nationwide Class, or in the alternative, the California Class, against Defendants for common law fraud.

96. Defendants have willfully, falsely, and knowingly misrepresented the Products through the Products' Avocado Oil Representations, as they knew that the Products were not made entirely with avocado oil.

97. Defendants have therefore made knowing, fraudulent misrepresentations as to the Products.

98. Defendants' misrepresentations were material (i.e., they affected the purchasing decisions of Plaintiff and members of the Nationwide Class, or in the alternative, the California Class, given their importance), and are central to the Products' functionality because the Products are advertised as made entirely with avocado oil, but do not conform to those representations.

99. Defendants knew or recklessly disregarded the fact that the Products' Avocado Oil Representations were false and deceptive.

100. Defendants intended that Plaintiff and members of the Nationwide Class, or in the alternative, the California Class, rely on the Products' advertising, as if they had known the truth that the Products' Avocado Oil Representations were false and misleading, they would have paid less for the Products or would not have purchased them at all.

101. Plaintiff and members of the Nationwide Class, or in the alternative, the California Class, have reasonably and justifiably relied on Defendants' misrepresentations when purchasing the Products, and if Plaintiff and members of the Nationwide Class, or in the alternative, the California Class, had known the truth about the Products, they would not have paid monies for the Products or would have paid less monies for the Products.

102. For these reasons, Plaintiff and members of the Nationwide Class, or in the alternative, the California Class, have suffered monetary losses, including interest they would have accrued on these monies, as a direct and proximate result of Defendants' fraudulent conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the proposed Classes, respectfully prays for the following relief:

A. Certification of this case as a class action on behalf of the proposed Classes defined above, appointment of Plaintiff as Class representative, and appointment of his counsel as Class counsel;

B. A declaration that Defendants' actions, as described herein, violate the statutes and laws described herein;

C. An award of injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the proposed Classes, including, inter alia, an order prohibiting Defendants from engaging in the unlawful acts described above;

D. An award to Plaintiff and the proposed Classes of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Defendants obtained from Plaintiff and the proposed Classes as a result of their unlawful, unfair and fraudulent business practices described herein;

E. An award of all economic, monetary, actual, consequential, and compensatory damages caused by Defendants' conduct;

F. An award of nominal, punitive, and statutory damages;

G. An award to Plaintiff and his counsel of reasonable expenses and attorneys' fees;

H. An award to Plaintiff and the proposed Classes of pre- and post-judgment interest, to the extent allowable; and

I. For such further relief that the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of himself and the proposed Classes, hereby demands a jury trial with respect to all issues triable of right by jury.

Dated: September 17, 2026

**SHAMIS & GENTILE, P.A.**

By: */s/ Andrew Shamis*
Andrew Shamis (NY Bar No. 5195185)
Katherine Phillips**
14 NE 1st Ave., Suite 705
Miami, FL 33132
Telephone: (305) 479-2299
ashamis@shamisgentile.com
kphillips@shamisgentile.com

**EDELSBERG LAW, P.A.**
Scott A. Edelsberg**
Gabriel Mandler**
20900 NE 30th Ave., Suite 417

Aventura, FL 33180
Telephone: (305) 975-3320
scott@edelsberglaw.com
gabriel@edelsberglaw.com

***pro hac vice application forthcoming*

*Attorneys for Plaintiff and the Putative Classes*